Case No: 23-13097-E

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

WILLIAM COREY, et al.
*Appellants,*
v.
ROCKDALE COUNTY, et al.
*Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION
DISTRICT COURT DOCKET NO: 1:22-CV-03918-MLB

---

## INITIAL BRIEF OF APPELLANTS

---

Roy E. Barnes
THE BARNES LAW GROUP, LLC
31 Atlanta Street
Marietta, GA 30060
Telephone: (770) 227-6375

*Attorney for Appellants William E. Corey and U.S. Enterprises, Inc.*

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u>
## <u>CORPORATE DISCLOSURE STATEMENT</u>

Plaintiffs-Appellants William E. Corey and U.S. Enterprises, Inc., submit this list pursuant to Eleventh Circuit Rule 26.1-2 (a), which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of this review:

1. Barnes, Roy E., The Barnes Law Group, LLC. counsel for William E. Corey and U.S. Enterprises, Inc.

2. Brown, Michael L. Honorable, Trial Judge, U.S. District Court, Northern District of Georgia.

3. Corey, William E., appellant.

4. Johnson, Kalanos, Director of the Planning and Development Department of Rockdale County.

5. Linkous, William J., III, attorney for the appellees/defendants.

6. Mitchell, Thomas M., Carothers & Mitchell, LLC attorneys for the appellees/defendants.

7. Nelson, Oz, Chairman of the Board of Commissioners of Rockdale County.

8. QuikTrip Corporation, proposed operator of a QT convenience and service station on the Corey and U.S. Enterprise property. QuikTrip Corporation is a privately held business corporation headquartered in Tulsa, Oklahoma.

Approximately 20% of the stock is owned by an Employee Stock Ownership Program or an ESOP.

9.  Rockdale County, appellee/defendant.

10. U.S. Enterprises, Inc, a business corporation under the laws of the State of Georgia. U.S. Enterprises, Inc is privately owned by William E. Corey and is not publicly traded.

11. Washington, Sherri L., member of the Board of Commissioners of Rockdale County.

12. Williams, Doreen, member of the Board of Commissioners of Rockdale County.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants respectfully request an opportunity to present oral argument. This appeal presents unsettled questions regarding the availability of injunctive relief against violations of federal law, as well as when federal constitutional claims that may be pursued in federal court ripen in relation to involuntary state court proceedings.

# TABLE OF CONTENTS

**Page**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**…………………………C-1 of 2

**STATEMENT REGARDING ORAL ARGUMENT**…………………………...…i

**TABLE OF CONTENTS**………………………………………………………ii

**TABLE OF AUTHORITIES**…………………………………………………iv

**JURISDICTIONAL STATEMENT**…………………………………………..x

**STATEMENT OF THE ISSUES**……………………………………………..1

**STATEMENT OF THE CASE**………………………………………………..2

I.    **Course of Proceedings Below**………………………………………...3

II.    **Statement of Facts**……………………………………………………5

III.    **Standard of Review**…………………………………………………..10

**SUMMARY OF THE ARGUMENT**………………………………………...11

**ARGUMENT AND CITATIONS OF AUTHORITY**…………………………12

I.    **Plaintiffs Have the Right to Seek Injunctive Relief to Prohibit Enforcement of the Truck Stop Ordinance as Preempted by the STAA**.12

    A.    Plaintiffs have an equitable right to enjoin the enforcement of a local ordinance preempted by federal law…………………………………13

    B.    Plaintiffs do not need a private cause of action under the STAA, but even if they did, the STAA creates privately enforceable rights……..16

    C.    The STAA does not preclude Plaintiffs from bringing an action to enjoin enforcement of the truck stop ordinance……………………...17

II.   **Rockdale County's Truck Stop Ordinance Falls Within the Purview of the STAA**………………………………………………………………..27

III.  **The Statute of Limitations Does Not Bar the 42 U.S.C. § 1983 Claims**….29

IV.   **The Trial Court Erred by Finding that Plaintiffs Did Not Have Standing to Assert Claims Arising out of the 2021 Ordinance**……………………34

V.    **The Trial Court Erred by Finding Plaintiffs' Constitutional Claims are Barred by *Res Judicata* and that the *Jennings* Reservations Could Only Apply to the Takings Claim and not the Other Constitutional Claims**..36

VI.   **The Trial Court Erred by Finding that Plaintiffs Did Not Sufficiently Plead Their Takings Claim**………………………………………………….39

VII.  **The Trial Court Erred By Finding that Plaintiffs Did Not Sufficiently Plead Their Equal Protection Claim**………………………………….42

VIII. **The Trial Court Erred By Finding that Plaintiffs Did Not Sufficiently Plead Their Substantive Due Process Claim**……………………………..44

IX.   **The Trial Court Erred By Dismissing Plaintiffs' Claim for Attorneys' Fees on the Grounds That Their Substantive Claims Failed**……………46

**CONCLUSION**………………………………………………………………..46

**CERTIFICATE OF COMPLIANCE**………………………………………...47

**CERTIFICATE OF SERVICE**……………………………………………..1

iii

# TABLE OF AUTHORITIES

*A.A. Profiles, Inc. v. Ft. Lauderdale*,
   850 F.2d. 1483 (11th Cir. 1988) ........................................................... 35

*A.B.F. Freight System, Inc. v. Suthard*,
   681 F. Supp. 334 (E.D. Va. 1988) .................................................... 23

*Agripost, Inc. v. Miami-Dade Cnty.*,
   195 F.3d 1225 (11th Cir. 1999) ........................................................ 41

*Air Evac EMS, Inc. v. Tex. Dep't of Ins.,Div. of Workers' Comp.*,
   851 F.3d 507 (5th Cir. 2017) ............................................................ 25

*Armstrong in UnitedHealthcare of N.Y., Inc. v. Lacewell*,
   967 F.3d. 82 (2d Cir. 2019) ...................................................... 20, 26

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015) ................................................ 11, 13, 15, 17, 18

*Ashcroft v. Randel*,
   391 F. Supp. 2d 1214 (N.D. Ga. 2005) ........................................... 33

*Aux Sable Liquid Prods. v. Murphy*,
   526 F.3d 1028 (7th Cir. 2008) .......................................... 22, 23, 28, 29

*Bailiff v. Davenport Transp., Inc.*,
   No. 3:13-CV-308-GCM, 2013 U.S. Dist. LEXIS 169691 (W.D.N.C. Dec. 2, 2013) .......................................................................... 16, 20

*Bannum, Inc. v. City of Fort Lauderdale*,
   157 F.3d 819, 822 (11th Cir. 1998)……………………………………..42

*Brantley County Development Partners, LLC v. Brantley County, Georgia*,
   559 F. Supp. 3d 1345 .................................................................. 36, 44

*BVCV Hight Point, LLC. v. The City of Prattville, Alabama*,
   2022 U.S. Dist. LEXIS 154894  (M.D. AL. 2022)……………………………41

*Cannon v. City of W. Palm Beach*,
   250 F.3d 1299, 1301 (11th Cir. 2001)……………………………………10

iv

*Chamber of Commerce of the United States v. Bonta*,
   62 F. 4th 473 (9th Cir. 2022) ............................................................. 25

*Chamber of Commerce of the United States v. Whiting*,
   563 U.S. 582 (2011) ........................................................................... 14

*City of Cumming v. Flowers*,
   300 Ga. 820 (2017) ............................................................................ 37

*City of Suwanee v. Settles Bridge Farm, LLC,*
   292 Ga. 434 (2013)…………………………………………………………………36

*Coen v. CDC Software Corp.*,
   304 Ga. 105 (2018) ............................................................................ 38

*Commer. Warehouse Leasing, LLC v. Thomas*,
   2019 U.S. Dist. LEXIS 6351, 2019 WL 187872 (W.D. Ky. 2018) .................. 23

*Consolidated Freightways Corporation of Delaware v. Larson*,
   647 F. Supp. 1479 (M.D. Pa. 1986) ............................................... 23-24

*Continental Can Co. v. Mellon*,
   825 F. 2d. 308 (11th Cir. 1987) ......................................................... 23

*Corn v. Lauderdale Lakes*,
   904 F.2d 585 (11th Cir. 1990) ..................................................... 11-12

*Corn v. Lauderdale Lakes*,
   904 F.2d a (11th Cir. 1990) ............................................................... 30

*Corn v. City of Lauderdale Lakes*,
   997 F.2d at, 1369, 1371…………………………………………………………..44

*Eide v. Sarasota Cnty.*,
   908 F.2d 716 (11th Cir. 1990) .................................................... 30-31

*Espinoza v. Mont. Dep't. of Revenue*,
   140 S. Ct. 2246 (2020) ...................................................................... 24

*Etheron v. City of Rainsville*,
   662 Fed. Appx. 656 (11th Cir. 2016) ............................................... 41

*Ex Parte Young*,
   209 U.S. 123 (1908) ........................................................................... 13

*Fields v. Sarasota Manatee Airport Auth.*,
   953 F.2d 1299 (11th Cir. 1992) ......................................................... 37

*First English Evangelical Lutheran Church v. Cty. of L.A.*,
   482 U.S. 304, 316-17 (1987)……………………………………………42

*Foley v. Orange Cnty.*,
   638 Fed. Appx 941 (11th Cir. 2016) ................................................. 42

*Friends of the E. Hampton Airport, Inc. v. Town of East Hampton*,
   841 F.3d 133, 144 (2d Cir. 2016)……………………………………..26

*Ga. Latino Alliance for Human Rights v. Governor of Georgia*,
   691 F.3d. 1250 (11th Cir. 2012) ....................................................... 14

*Gary v. City of Warner Robins*,
   311 F.3d 1334, 1337 (11th Cir. 2002)…………………………………42

*Garza v. City of LaPorte*,
   160 F.Supp.3d 986 ..................................................................... 21, 28

*Gonzaga Univ. v. Doe*,
   536 U.S. ............................................................................................ 17

*Hanscom's Truck Stop v. City of Portsmouth*,
   1998 U.S. Dist. LEXIS 18059 (D. N.H. 1998) .......................... 15, 27

*Health & Hosp. Corp. of Marion County v. Talevski*,
   599 U.S. 166, 143 S. Ct. 1444 (2023) ................................... 16, 21, 39

*Hillcrest Property., LLP v. Pasco County*,
   915 F.3d 1292 (11th Cir. 2019) .......................................................... 4

*Hines v. Davidowitz*,
   312 U.S. 52, 73-74, fn.3 (1941) ....................................................... 14

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 13 (2011) ........................................................................... 21

vi

*Knick v. Township of Scott, Pennsylvania*,
139 S. Ct. 2162 (2019) ........................................................................ 29, 30, 32

*Kornischuk v. Con-Way Cent. Express*,
No. 1-03-CV-10013, 2003 U.S. Dist. LEXIS 14459 (S.D. Iowa June 4, 2003)
........................................................................................................ 16, 20

*LHR Farms, Inc. v. White County, Georgia*,
2010 U.S. Dist. LEXIS 149917 (N.D. Ga. 2010) ............................................ 45

*Lingle v. Chevron U.S.A. Inc*,
544 U.S. 528 (2005) ........................................................................ 40

*Macon-Bibb Cty. Planning & Zoning Comm'n v. Epic Midstream, LLC*,
349 Ga. App. 568 (2019)……………………………………………………………37

*Marbury v. Madison*,
5 U.S. 137, 1 (1803)……………………………………………………...24

*Mohit v. City of Haines City*,
2019 U.S. Dist. LEXIS 127833 *14 ........................................................ 42, 43, 44

*New Hampshire Motor Transp. Ass'n. v. Town of Plaistow*,
836 F. Supp. 59 (D. N.H. 1993), rev'd on other grounds, 67 F. 3d. 326 (1st Cir. 1995) ........................................................................................................ 23

*New Port Largo v. Monroe County*,
985 F.2d 1488 (11th Cir. 1993) ........................................................ 12, 30, 32, 37

*New York* State Motor Trucking Ass'n. *v.*
New York, 654 F. Supp. 1521 (S.D.N.Y. 1987) ............................................. 23

*North Face Constr., LLC v. City of Birmingham*,
2022 U.S. Dist. LEXIS 122802 (N.D. Ala. 2022) ............................................ 36

*Penn Central Transportation v. New York City*,
438 U.S. 104, (1978) ........................................................................ 40, 41

*Pennsylvania Coal Company v. Mahon*,
260 U.S. 393 (1922) ........................................................................ 39-40

*Perez v. Wells Fargo N.A.*,
    774 F.3d 1329 (11th Cir. 2014) ......................................................... 10

*Planned Parenthood Southeast v. Bentley*,
    141 F. Supp.3d 1207 ........................................................................ 21

*Rockdale County v. U.S. Enterprises, Inc. et al*,
    312 Ga. 752 (2021) .......................................................................... 8

*S. Grande View Dev. Co. v. City of Alabaster*,
    Alabama, 1 F.4th 1299 (11th Cir. 2021) ......................................... 31, 33, 35, 40

*Scurlock v.* City of *Lynn Haven*,
    858 F.2d 1521 (11th Cir. 1988) .................................................. 14-15

*Shaw v. Delta Air Lines*,
    Inc., 463 U.S. 85 (1983) ................................................................. 14

*Sheba Ethiopian Rest., Inc. v. Dekalb Cty, et al*,
    820 Fed. Appx. 889 (11th Cir. 2020) ............................................... 38

*Short Term Rental Owners Association of Georgia, Inc. v. Cooper*,
    515 F. Supp. 3d 1331 (N.D. Ga. 2021) ............................................. 45

*Sims v. Fla., Dep't of Highway Safety & Motor Vehicles*,
    862 F.2d 1449 (11th Cir. 1989) (en banc) ........................................ 14

*Stevenson v. Colgate-Palmolive Co*,
    2017 U.S. Dist. LEXIS 227806, at *10 (M.D. Fla. Sep. 7, 2017)……………..34

*U.S. Enterprises, Inc. v. Rockdale Cty.*,
    No. S22C1137 (Ga. Feb. 21, 2023)…………………………………………9

*Under Williamson Cty. Regional Planning Comm'n. v. Hamilton Bank*
    of Johnson City, 473 U.S. 172 (1985) ........................................... 29, 30

*United States v. Connecticut*,
    566 F. Supp. 571 (D. Ct. 1983) ....................................................... 24

viii

**STATUTES**

23 C.F.R. § 658.19 ................................................................... 22, 28

42 U.S.C. § 1396a(a)(30)(A)…………………………………………………18, 19

42 U.S.C. § 1983 ........................................................... 16, 17, 29, 3, 39

42 U.S.C. § 1983(Count II)…………………………………………………..3

42 U.S.C. § 1988(b) ........................................................................ 46

49 U.S.C. § 31 ............................................................................... 44

49 U.S.C. at 323, 328 ..................................................................... 19

49 U.S.C. § 31105 .......................................................................... 16

49 U.S.C. § 31114 ........................................... 13, 17, 18, 19, 2, 44

49 U.S.C. § 31115 ................................................................... 17, 20

49 U.S.C. § 31114 .......................................................................... 19

465 U.S.C § 1014 (1984) ................................................................ 24

O.C.G.A. § 5-4-1 ........................................................................... 37

O.C.G.A. § 13-6-11 ....................................................................... 46

**RULES**

Fed. R. App. P. 27 ......................................................................... 47

Fed. R. App. P. 32 ......................................................................... 47

## **JURISDICTIONAL STATEMENT**

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because Plaintiffs appeal from a final decision by a District Court in this Circuit. The Order entered by the District Court on August 28, 2023, granted Defendant's Motion for Judgment on the Pleadings, disposing of all claims. (Order, Doc. 37). Plaintiffs filed a timely notice of appeal on September 11, 2023. (Notice of Appeal, Doc. 39). The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action seeks to enjoin a local ordinance as preempted by the Surface Transportation Assistance Act, 49 U.S.C. § 31114, and seeks redress under 42 U.S.C. § 1983 for violations of rights guaranteed by the Constitution of the United States.

## STATEMENT OF THE ISSUES

1.  Whether the trial court erred by finding that Plaintiffs had no right of action to pursue a claim for injunctive relief for a violation of the Surface Transportation Assistance Act (STAA). (Doc. 37, at 10-18).

2.  Whether the trial court erred by finding that the Plaintiffs' STAA claim fails because the County's zoning ordinance does not fall within the purview of the STAA.  (Doc. 37, at 18-19, n.6).

3.  Whether the trial court erred by finding that Plaintiffs' claims arising out of the 2006 ordinance are barred by the statute of limitations. (Doc. 37, at 22).

4.  Whether the trial court erred by finding that Plaintiffs did not have standing to assert claims arising out of the 2021 ordinance. (Doc. 37, at 22).

5.  Whether the trial court erred by finding that Plaintiffs' constitutional claims are barred by *res judicata*, and that the *Jennings* reservation could only apply to the takings claim and not the other constitutional claims. (Doc. 37, at 28-31).

6.  Whether the trial court erred by finding that Plaintiffs did not sufficiently plead their takings claim. (Doc. 37, at 34).

7.  Whether the trial court erred by finding that Plaintiffs did not sufficiently plead their equal protection claim. (Doc. 37, at 37).

1

8.    Whether the trial court erred by finding that Plaintiffs did not sufficiently plead their substantive due process claim. (Doc. 37, at 38).

9.    Whether the trial court erred by dismissing Plaintiffs' claim for attorneys' fees on the grounds that their substantive claims failed. (Doc. 37, at 42).

## STATEMENT OF THE CASE

This case challenges a local government's total prohibition against the development of a truck stop next to an interstate. Such a prohibition is contrary to the Surface Transportation Assistance Act (STAA), which guarantees reasonable access for commercial motor vehicles to facilities for food, fuel, repairs, and rest. 49 U.S.C. § 31114. The subject matter is less mundane than it might appear at first blush, as it implicates fundamental issues such as the protection of the supply chain, the right of travel and transport of goods in interstate commerce, and the remedies a landowner may seek for the discrimination of such protected rights. First, the trial court erred by finding that the STAA could not sustain a claim for injunctive relief to vindicate such rights. The trial court also erred in dismissing the various claims for damages. In its haste to dispatch the case in one fell swoop on statute of limitations grounds, it ignored this Circuit's precedent. Though such precedent might merit clarification in light of a subsequent Supreme Court case (*Knick*), it is still binding, and it was error to hold otherwise. As a backup, the trial court then ignored well-worn precedent on how to preserve federal claims and prevent *res*

2

*judicata* resulting from involuntarily-instituted state court litigation by way of a *Jennings* reservation. The trial court also erred by summarily rejecting a variety of constitutional land use claims which courts in this Circuit regularly allow to proceed, and Plaintiffs-Appellants respectfully request that the trial court be reversed.

## I.    Course of Proceedings Below

On September 28, 2022, Plaintiffs-Appellants filed the Complaint in the District Court for the Northern District of Georgia, alleging the preemption of Rockdale County's truck stop ordinance by the Surface Transportation Assistance Act (STAA) (Count I) and asserting the deprivation of rights guaranteed by the U.S. Constitution under 42 U.S.C. § 1983 (Count II). (Compl., Doc. 1, at 28-52, ¶¶ 94-169). Defendants-Appellees filed a Motion for Judgment on the Pleadings. (Doc. 19). After briefing and oral argument (Docs. 19, 26, 29, 46), the Honorable Michael L. Brown granted Judgment on the Pleadings, dismissing all Plaintiffs' claims and making the following rulings presented for review:

a.    Plaintiffs do not have a private right of action to bring a claim for injunctive relief for a violation of the STAA. (Order, Doc. 37, at 10-18).

b.    Plaintiffs' STAA claim fails because Rockdale County's zoning ordinance falls outside the purview of the STAA. (Doc. 37, at 18-19, n.6).

3

c.  Plaintiffs' constitutional claims under Count II related to the 2006 UDO are barred by a two-year statute of limitations. (Doc. 37, at 19-21, 23-25).

d.  Plaintiffs do not have standing to assert constitutional claims under Count II related to the 2021 truck stop ordinance. (Doc. 37, at 22).

e.  Plaintiffs' constitutional claims (other than those related to the 2021 ordinance) are barred by res judicata, and the *Jennings* reservation could only apply to the takings claim and not the other constitutional claims. (Doc. 37, at 28-29).

f.  Plaintiffs failed to plead a takings claim because they did not complain that the ordinance denies all beneficial or productive use of the property. (Doc. 37, at 32-34).

g.  Plaintiffs did not plead an equal protection claim because they did not identify similarly situated comparators. (Doc. 37, at 36-37).

h.  Plaintiffs' substantive due process claim fails because they do not have standing as to the 2021 ordinance and any challenge to the permitting decision under the 2006 UDO is expressly foreclosed by *Hillcrest Property., LLP v. Pasco County*, 915 F.3d 1292, 1302 (11th Cir. 2019). (Doc. 37, at 37-38).

4

      i.     As a derivative claim, the District Court dismissed Plaintiffs' claim for attorneys' fees. (Doc. 37, at 42).

(Order, Doc. 37).[1] From this decision, a timely Notice of Appeal was filed on September 11, 2023. (Doc. 39).

## II.    Statement of Facts

Plaintiffs-Appellants William E. Corey ("Corey") and U.S. Enterprises, Inc. ("Enterprises") are the owners of a 35-acre tract of land ("Property") located at the southwest corner of Interstate 20 and Sigman Road, which is a full diamond interchange. (Doc. 1, at 4, 5, 12, ¶¶ 12-13, 43). The Property is within one thousand feet of the interstate. (Doc. 1, at 5, 11, ¶¶ 25, 41). The Property is zoned C-2, which allows for convenience stores and fueling stations. (Doc. 1 at 5, 6, 12, 14, ¶¶ 17, 18, 42, 50).

In 1999, Rockdale County told Plaintiffs that building a truck stop on the Property would not be permitted, as it was not a "specifically designated use" under the then-existing zoning ordinance. (Doc. 1, at 6-7, ¶¶ 19-22). After Plaintiffs proposed an amendment, the Board of Commissioners ("BOC") amended the zoning code to permit truck stops, but only in M-2 zoning districts that are industrial and sparsely developed areas. (Doc. 1, at 7, ¶¶ 23-26). Before the amendment passed,

---

[1] Appellants do not challenge the trial court's holdings related to procedural due process and qualified and legislative immunity.

5

Plaintiffs applied for a permit for a Travel Plaza to service both automobiles and heavy trucks. (Doc. 1, at 8, ¶¶ 27-29). The application was returned to Plaintiffs, and Plaintiffs' mandamus action was unsuccessful. (Doc. 1, at 8-9, ¶¶ 29-31). As a result, Plaintiffs' agreement with Petro, Inc. for the ground lease of 25 acres was voided. (Doc. 1, at 9 ¶¶ 32-33).

In 2004, Plaintiffs paid Rockdale County $140,000 for sewer capacity in the hopes of developing the Property for its highest and best use. (Doc. 1, at 9, ¶ 34). Plaintiffs also bought 9.34 acres of adjacent property closer to the interstate. (Doc. 1, at 10, ¶ 35).

Since 2006, Rockdale County has prohibited truck stops in the entire county. (Doc. 1, at 10, ¶¶ 36-29). Uniform Development Ordinance (UDO) 106-1 adopted the following definition of a prohibited truck stop ("truck stop ordinance"):

> *Truck stop:* A prohibited use that includes any building, premises, or land in which or upon which a business, service, or industry involving the maintenance, servicing, storage, or repair of heavy trucks and similar commercial vehicles is conducted or rendered, including the dispensing of motor fuel or other petroleum products primarily for such heavy trucks and similar commercial vehicles and the sale of accessories or equipment for heavy trucks and similar commercial vehicles, as well as overnight accommodations, showers, overnight customer parking, or restaurant facilities for the use of crews of heavy trucks and similar commercial vehicles.

(Doc. 1, at 11, ¶ 40).

In January 2018, Plaintiffs entered into an agreement with QuikTrip to construct a Travel Plaza on 6.7 acres of the Property. (Doc. 1, at 12, ¶ 42). It would

feature a convenience store of 7,000 square feet with 18 to 20 gasoline fueling stations and 6 to 8 diesel fueling stations. (Doc. 1, at 12, 15, 16, ¶¶ 42, 51-53). Plaintiffs met with the Director of Rockdale County's Planning and Development Department, who told them the plan was not allowed but that the Board of Commissioners would entertain an amendment to accommodate the QuikTrip. (Doc. 1, at 17, ¶¶ 56-57). Despite the Planning Commission recommending its approval, the BOC unanimously defeated the amendment in November 2018. (Doc. 1, at 17-19, ¶¶ 58-61). Rockdale County therefore thwarted the highest and best use of the Property and caused Plaintiffs financial harm. (Doc. 1, at 19, ¶ 62).

On August 20, 2019, Corey applied to Rockdale County for a land disturbance permit (LDP), contending the proposed QuikTrip facility did not meet the ordinance's definition of a truck stop. (Doc. 1, at 19, ¶ 63). Rockdale County rejected Corey's LDP application. (Doc. 1, at 20, ¶ 65).

After the Board Of Adjustment (BOA) affirmed the denial of the LDP on December 2, 2019 (Doc. 1, at 20-21, 23, ¶¶ 67-68, 75), Appellants filed a timely petition for certiorari seeking review of the BOA's decision in the Superior Court of Rockdale County on December 23, 2019. (Doc. 1, at 23, ¶ 76). Appellants included a *Jennings* reservation in the petition: "No claim is made pursuant to the Constitution of the United States or the laws of the United States. Such action, including damages, are reserved for the appropriate courts of the United States." (Doc. 1, at 23, ¶ 77).

The Superior Court initially held the truck stop ordinance void for vagueness under the 1983 Constitution of Georgia. (Doc. 1, at 24, ¶ 80). Rockdale County appealed that decision to the Georgia Supreme Court. (Doc. 1, at 24, ¶ 87). After the certiorari hearing, but before the Court rendered its decision, the BOC passed an ordinance on June 21, 2021, amending the heavy truck and truck stop prohibition as follows:

> Section 106-1 *Truck stop*
> A gasoline station or gasoline station with convenience store that dispenses diesel or any other fuel or petroleum product used by heavy trucks, and which includes one or more of the following additional facilities:
> (1)     A parking designed for use by heavy trucks.
> (2)     Weighted scales designed for use by heavy trucks.
> (3)     A raised canopy used primarily or exclusively by heavy trucks to dispense diesel or other heavy truck fuel that is separate or distinct from the canopy of area used to dispense fuel to cars.
> (4)     A restaurant or fast-food restaurant which includes either dine-in facilities or a drive-through window or both.
> (5)     Facilities for the maintenance and/or repair of heavy trucks.
> (6)     Facilities for the overnight storage of heavy trucks.
> (7)     Shower facilities made available to crews of heavy trucks.
> (8)     Graded hard surface areas designed specifically to accommodate the wide turning radius utilized by heavy trucks.
> (9)     Specifically designed entrances and exist to accommodate access by numerous heavy trucks and/or
> (10)    Any other specialized facility or amenity designed specifically for the use of heavy trucks and/or the crews or heavy trucks.

(Doc. 1, at 26-27, ¶ 89).

On November 2, 2021, the Georgia Supreme Court reversed the trial court in *Rockdale County v. U.S. Enterprises, Inc. et al*, 312 Ga. 752 (2021), and remanded

the case to the Superior Court of Rockdale County to determine whether there was substantial evidence supporting the denial of the LDP. (Doc. 1, at 24-25, ¶¶ 82-83). On April 1, 2022, the Superior Court of Rockdale County determined there was substantial evidence that the QuikTrip project was a truck stop. (Doc. 1, at 25, ¶ 84). A discretionary appeal was taken to the Court of Appeals, which denied review. (Doc. 1, at 25, ¶ 86). The Supreme Court of Georgia denied Appellant's petition for writ of certiorari on June 16, 2022. (Doc. 1, at 25, ¶ 87; *U.S. Enterprises, Inc. v. Rockdale Cty.*, No. S22C1137 (Ga. Feb. 21, 2023).

Plaintiffs allege there is no health or safety reason to prohibit heavy trucks from being serviced on the Property. (Doc. 1, at 41, ¶ 135). In fact, the QuikTrip will alleviate traffic and safety concerns by servicing trucks safely and conveniently right off the interstate instead of having to drive local roads to existing stations not designed to accommodate trucks. (Doc. 1, at 40-41, ¶¶ 133-34). Rockdale County has allowed those other businesses to continue servicing heavy trucks while denying the same access to Plaintiffs, and photos of those locations are attached to the Complaint. (Doc. 1, at 49, ¶¶ 161). During the BOA hearing, a Board member observed in one of the photos that the truck barely fits into the gas station. (Doc. 1, at 22, ¶ 73). There are no currently existing rest areas for heavy trucks in Rockdale County. (Doc. 1, at 40, ¶ 131). The only places for heavy trucks to get food and rest are those that pre-dated the truck stop ordinance, and truck drivers looking for

restrooms, stores, or restaurants must venture off the interstate. (Doc. 1, at 40-41, ¶¶ 130-132).

The truck stop ordinance has impaired Plaintiffs' financial interest in the property. (Doc. 1, at 5, 27, ¶¶ 14, 91). Rockdale County has prevented Plaintiffs from using the Property to service heavy trucks, resulting in the failure of development deals over the years. (Doc. 1, at 27, ¶ 92). There is no other economically viable use for the Property other than a convenience store serving automobiles, light trucks, and heavy trucks. (Doc. 1, at 42, ¶ 137). Numerous other efforts to develop or use the property have failed. (Doc. 1, at 42-43, ¶¶ 137-142).

## III. Standard of Review

As this is a review of an order granting a motion for judgment on the pleadings, a *de novo* standard of review is warranted for Appellants' contentions. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *See id.* (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). In making this determination, a court must accept as true all allegations in the non-moving party's pleading and construe them in the light most favorable to the non-moving party. *Id.*

10

## SUMMARY OF THE ARGUMENT

First, the Plaintiffs challenge a local ordinance prohibiting the construction of truck stops on the grounds that it violated the STAA. This federal statute ensures adequate terminals and facilities for food, fueling, repair, and rest and preempts state or local governments from prohibiting such access. The district court erred by finding that Plaintiffs were unable to enjoin the enforcement of a local ordinance which violated – and is preempted by – the STAA. Its analysis was flawed by holding that the STAA did not affirmatively *create* a private right of action. Rather, the issue, properly framed, is whether the federal statute *precluded* the Plaintiffs from seeking relief in equity. As other courts have recognized, the STAA does not preclude the right of an individual to seek injunctive relief. And *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) does not mandate otherwise. Further, on the merits, the type of ordinance at issue here is exactly the sort of conduct that the STAA sought to prevent.

Second, the Plaintiffs asserted constitutional claims arising out the enforcement of a local ordinance which violated federal law. It was error to dismiss these claims. Contrary to the district court's finding, the claims were not untimely because Plaintiffs filed suit shortly after receiving the final order; to hold that a case is ripe before there is a final state court order would require overturning this Court's direct precedent as set forth in *Corn v. Lauderdale Lakes*, 904 F.2d 585 (11th Cir.

11

1990), and *New Port Largo v. Monroe County*, 985 F.2d 1488 (11th Cir. 1993). Further, Plaintiffs had standing to challenge the 2021 ordinance whether or not they filed a new application after that ordinance was passed. The later ordinance was more restrictive of the existing ordinance, so any application would surely have been futile. *Res judicata* does not bar the claims because the federal and state claims had separate causes of action, and because Plaintiffs expressly asserted a *Jennings* reservation in the state court proceedings. As with ripeness, Plaintiffs should not be punished for following this Court's direct precedent.

Substantively, the constitutional claims survive because the ordinance effected a quintessential regulatory taking by preventing the property's highest and best use. As to the equal protection claim, the Court improperly decided disputed record evidence as to the existence of similarly situated comparators as a matter of law. The trial court improperly dismissed the substantive due process claim because the Plaintiffs pled that the total prohibition on a truck stop adjacent to an interstate is not rationally related to a legitimate government interest. Finally, the dismissal of the attorneys' fees claim was erroneous, as it was based upon the erroneous dismissal of the substantive underlying claims.

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.    Plaintiffs Have the Right to Seek Injunctive Relief to Prohibit Enforcement of the Truck Stop Ordinance as Preempted by the STAA.**

12

Rockdale County prohibits truck stops anywhere in Rockdale County. (Doc. 1, at 10, ¶¶ 38-39). This conflicts with the Surface Transportation Assistance Act ("STAA"), which expressly preempts state laws denying commercial motor vehicles reasonable access between the interstate and facilities for food, fuel, repairs, and rest:

> Prohibition on denying access. – ***A State may not enact or enforce a law*** denying to a commercial motor vehicle subject to this subchapter or subchapter 1 of the chapter ***reasonable access between***—
> **(1)** the ***Dwight D. Eisenhower System of Interstate and Defense Highways*** . . . ***and***
> **(2)** terminals, ***facilities for food, fuel, repairs, and rest*** . . .

49 U.S.C. § 31114 (emphasis added).

A.    <u>Plaintiffs have an equitable right to enjoin the enforcement of a local ordinance preempted by federal law.</u>

Plaintiffs' right to sue to enjoin a local ordinance preempted by federal law is "the creation of courts of equity," tracing its roots back to England. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court reviewed cases going back to 1824 and held "individuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." *Id.* at 142.

13

An unbroken line of cases have followed *Ex Parte Young,* and the right to seek injunctive and declaratory relief on the grounds that a state law is preempted by virtue of the Supremacy Clause has been affirmed time and again. *E.g. Chamber of Commerce of the United States v. Whiting*, 563 U.S. 582, 593, 611 (2011) (upholding a state law despite the Chamber of Commerce's pre-enforcement suit alleging it was preempted by federal law); *Hines v. Davidowitz*, 312 U.S. 52, 73-74, fn.3 (1941) (finding state law preempted in a suit by a private plaintiff against state officials). In *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85 (1983), the Supreme Court resolved claims in which plaintiffs alleged ERISA preempted state law, observing that:

> It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U. S. C. § 1331 to resolve.

*Id.* at 96 n.14. *See also Ga. Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d. 1250, 1260-61, 1269 (11th Cir. 2012) (suit brought a group of individual and organizational plaintiffs to enjoin a state immigration law at as preempted by "the supremacy of federal law"); *Sims v. Fla., Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1453-55 (11th Cir. 1989) (en banc) (suit brought by consumer to preclude enforcement of a Florida law preempted by the federal Clean Air Act); *Scurlock v. City of Lynn Haven*, 858 F.2d 1521, 1522, 1525 (11th

14

Cir. 1988) (suit brought by homeowners to enjoin a city ordinance as preempted by federal law). In *Hanscom's Truck Stop v. City of Portsmouth*, 1998 U.S. Dist. LEXIS 18059 at \*8 (D. N.H. 1998) (holding that the absence of an express private right of action under 49 U.S.C. § 31114 does not preclude a truck stop's preemption claim).

*Armstrong v. Exceptional Child Ctr., Inc*., 575 U.S. 320 (2015), did nothing to alter this equitable right. On the contrary, *Armstrong* cited the *Ex Parte Young* line of cases approvingly, observing that "as we have long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Id.* at 326.

Plaintiffs' ability to enjoin enforcement of the truck stop ordinance arises in equity and does require a private right of action created by either the Supremacy Clause or the STAA. The trial court held that "the source of a preemption claim must be the statute at issue, rather than the Supremacy Clause or some other judicially created right" and concluded that "the STAA plainly does not provide plaintiffs a statutory right to recover." Order, Doc. 37, at 14, 18. But the trial court erred in demanding the STAA provide such a right. Preemption claims seeking injunctive relief are "the creation of courts of equity" that do not need Congress to breathe life into them. *Armstrong,* 575 U.S. at 327.

15

B.    <u>Plaintiffs do not need a private cause of action under the STAA, but even if they did, the STAA creates privately enforceable rights.</u>

Even though Plaintiff does not need the STAA to contain a private right of action, such a right exists. The trial court erred by relying on the unpublished cases *Bailiff* and *Kornischuk* to find no private right of action. (Doc. 37, at 12-13). Both cases are easily distinguished because they involved terminated employees bringing retaliation claims that failed to exhaust the administrative procedures in 49 U.S.C. § 31105. *Bailiff v. Davenport Transp., Inc.*, No. 3:13-CV-308-GCM, 2013 U.S. Dist. LEXIS 169691, at *9 (W.D.N.C. Dec. 2, 2013) (finding no jurisdiction because plaintiff failed to exhaust administrative remedies); *Kornischuk v. Con-Way Cent. Express*, No. 1-03-CV-10013, 2003 U.S. Dist. LEXIS 14459, at *8 (S.D. Iowa June 4, 2003) (same).

The STAA does create privately enforceable rights, and a decision of the Supreme Court this year sets out the framework for making that determination. On June 8, 2023, the Supreme Court decided the case of *Health & Hosp. Corp. of Marion County v. Talevski*, 599 U.S. 166, 143 S. Ct. 1444 (2023). *Talevski* involved a suit under 42 U.S.C. § 1983 for violation of the protection of the Federal Nursing Home Reform Act. ('FNHRA"). *Id.* at 1450. FNHRA does not contain a private cause of action for violations and sets forth an extensive administrative framework for the inspection and sanction of noncompliant facilities. *Id.* at 1446, 1449. The Supreme Court found that FNHRA created privately enforceable federal rights

16

because §1983 is presumed to be available to enforce "unambiguously conferred federal individual rights" and there is "no incompatibility between private enforcement under § 1983 and the statutory scheme that Congress has devised for the protection of those rights." *Id.* at 1446; *accord Gonzaga Univ. v. Doe*, 536 U.S. at 280, 283-84 (holding that when the federal act unambiguously confers "individual rights," those rights "presumptively enforceable" under § 1983).

Under FNHRA, a nursing home resident has a right to be free from physical or chemical restraints not required for medical treatment and the right not to be transferred without notice. *Id.* at 1456. The STAA grants the driver of a commercial motor vehicle the right to have reasonable access to food, fuel, repairs, and rest along the interstate. 49 U.S.C. § 31114. And neither the reasonable access provision nor its enforcement mechanism in 49 U.S.C. § 31115 are incompatible with private enforcement.

C.    The STAA does not preclude Plaintiffs from bringing an action to enjoin enforcement of the truck stop ordinance.

While Plaintiffs have a right to seek equitable relief "traditionally available to enforce federal law," Congress can enact legislation that cuts off that private right of action. *Armstrong v. Exceptional Child Ctr., Inc*., 575 U.S. 320, 329 (2015). But plaintiffs do not lose access to their equitable remedy unless the statute itself, fairly read in the context of the larger statutory scheme, "displays an intent to foreclose the availability of equitable relief." *Id.* While the trial court mistakenly went searching

17

in the STAA for a private right of action, the trial court also relied on *Armstrong v. Exceptional Child Center, Inc.* for the proposition that Plaintiffs' right to seek relief was precluded by statute. Doc. 37, at 15-17. Finding this case was "on all fours with *Armstrong*," the trial court concluded that "Plaintiffs cannot cloak their STAA arguments in the guise of the Supremacy Clause to assert a private enforcement action that is precluded by the statute." Doc. 37, at 14-15. But *Armstrong* does not control the result here.

In *Armstrong*, the Court considered Section 30(A) of the Medicaid Act, which requires Idaho's Medicaid plan to "provide for payments that are 'consistent with efficiency, economy, and quality of care,' all the while 'safeguard[ing] against unnecessary utilization of . . . care and services." *Armstrong*, 575 U.S. at 328 (quoting 42 U.S.C. §1396a(a)(30)(A)). A group of providers sued Idaho Health and Welfare Department officials, claiming that Idaho reimbursed them at rates lower than §30(A) permits, and seeking to enjoin state officials to increase these rates. *Id.* at 323. In concluding that the Medicaid Act implicitly precludes private enforcement of §30(A), the Court began by observing the sole remedy provided in the statute is the withholding of Medicaid funds by the Secretary of Health and Human Services. *Id.* at 329. But that was not enough. That provision "might not, by itself, preclude the availability of equitable relief…but it does so when combined with the judicially unadministrable nature of § 30(A)'s test." *Id.*

18

The "judicially administrable nature of 30(A)" was key to the Court's holding.

The Court found it "difficult to imagine a requirement broader and less specific than

§30(A)'s mandate," which requires that state plans:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area . . . .

*Id.* at 323, 328 (quoting 42 U.S.C. §1396a(a)(30)(A)). This "judgment laden

standard" suggests that Congress wanted the agency to remedy violations because it

has the expertise to tackle the "sheer complexity" involved in determining whether

a violation exists. *Id.* at 328-29.

The provision of the STAA at issue here is in a different league from 30(A).

The STAA was enacted to regulate interstate commerce pursuant to the Commerce

Clause and provides in relevant part:

> A State may not enact or enforce a law denying to a commercial motor vehicle . . . reasonable access between—
> (1) the Dwight D. Eisenhower System of Interstate and Defense Highways . . .; and
> (2) terminals, facilities for food, fuel, repairs, and rest . . .

49 U.S.C.S. § 31114(a). The enforcement mechanism associated with this

provision does not have language providing a sole alternative remedy to litigation,

like the withholding of funds in *Armstrong:*

> On the request of the Secretary of Transportation, the Attorney General shall bring a civil action for appropriate injunctive relief to ensure compliance with this subchapter or subchapter I of this chapter.

49 U.S.C. § 31115. It does not by its plain terms place exclusive enforcement power in the hands of either the Secretary of Transportation or the Attorney General; it merely requires the Attorney General to act upon the Secretary's request. Permission to allow the Secretary to require the Attorney General to bring an enforcement action is hardly the type of framework which would prohibit an action to enjoin preempted local statute. The relevant STAA enforcement provision is much more analogous to the enforcement provision that the Second Circuit distinguished from *Armstrong* in *UnitedHealthcare of N.Y., Inc. v. Lacewell*, 967 F.3d. 82, 91 (2d Cir. 2019), authorizing an agency "to take such actions as are necessary to bring a State into compliance."

Nor is there a comprehensive regulatory mechanism to allow redress for violations of the relevant provision of the STAA. That was the case in two employment termination cases cited by the trial court. *Bailiff v. Davenport Transp., Inc.*, No. 3:13-CV-308-GCM, 2013 U.S. Dist. LEXIS 169691, at *9 (W.D.N.C. Dec. 2, 2013); (finding no jurisdiction because plaintiff failed to exhaust administrative remedies); *Kornischuk v. Con-Way Cent. Express*, No. 1-03-CV-10013, 2003 U.S. Dist. LEXIS 14459, at *8 (S.D. Iowa June 4, 2003) (same). However, the existence of a complex regulatory framework does not necessarily prevent a right from being

20

privately enforceable. *See Talevski*, 143 S. Ct. 1444 (holding an extensive enforcement provision involving administrative inspections and sanctions, even exclusion from the program as potential remedies did not preclude private enforcement under § 1983); *Janus Capital Group, Inc. v. First Derivative Traders,* 564 U.S. 13 (2011) (finding an implied right of action even though neither Rule 10b-5 nor § 10(b) expressly create a private right of action and the field of securities is heavily regulated).

Under the second part of the *Armstrong* test, this provision of the STAA is not unadministrable. The standard it uses – "reasonable access" – is a far cry from the dueling and overlapping considerations in *Armstrong*. *Cf. Planned Parenthood Southeast v. Bentley*, 141 F. Supp.3d 1207, 1216-17 (M.D. Al. 2015) (finding courts capable of determining whether a provider is "qualified to perform a service" because that does not require "a crash-course in health-systems administration"). The judiciary is more than capable of interpreting what constitutes reasonable access, particularly in clear cases like the one at hand. And it has done so on numerous occasions and in multiple jurisdictions, proving the question is justiciable. *See Garza v. City of LaPorte*, 160 F.Supp.3d 986, 1001-04 (S.D. Tx. 2016) (finding the question of reasonable access justiciable and citing other cases). "Reasonable access" does not require the technical expertise of the Department of Transportation nor the weighing of complex and competing factors. And contrary to the trial court's

holding, "reasonable access" is not uniform nationally, and at least in cases not involving total bans, will likely require a fact-specific inquiry of local conditions. *See Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1036 (7th Cir. 2008) ("Congress's overarching goal of uniformity for commercial motor vehicles utilizing the Interstate will vary across the country depending on factors such as whether the Interstate is cutting across rural or metro areas, traffic density on the road, and other considerations.")

Further, the Secretary of Transportation has issued regulations that provide additional guidance, including one that prohibits states from enacting or enforcing "any law denying access within 1 road-mile from the National Network using the most reasonable and practicable route available except for specific safety reasons on individual routes." 23 C.F.R. § 658.19.

The trial court surmised enforcing these provisions would turn federal courts into local zoning boards. Not true. The Property is already zoned for the dispensing of fuel and service; the local government simply may not discriminate against heavy trucks unless there is an objective safety reason. To conclude otherwise would allow a local government to thumb its nose at a federal law designed to protect interstate commerce, and Plaintiffs' only remedy would be to complain to the Secretary of Transportation and hope the Secretary then asks the Attorney General to bring an

enforcement action. Weight restrictions, length restrictions, and other regulations assuring the safety and efficacy of the supply chain would be brought to a halt.

Prior to Armstrong, numerous federal courts have allowed private parties to sue to enforce rights arising under the STAA. *E.g., Aux Sable Liquid Prods. v. Murphy,* 526 F. 3d 1028 (7th Cir. 2008) (finding that weight limitations preempted under STAA in an action brought by a terminal owner); *Continental Can Co. v. Mellon,* 825 F. 2d. 308 (11th Cir. 1987) (holding the STAA preempted a Florida law governing maximum trailer length); *Commer. Warehouse Leasing, LLC v. Thomas,* 2019 U.S. Dist. LEXIS 6351, 2019 WL 187872 (W.D. Ky. 2018) ("This language along with the existence of case law, including a case in the Sixth Circuit, in which private plaintiffs sued to enforce the reasonable access provision of the STAA persuades this Court that a private right of action exists under this statute."); *New Hampshire Motor Transp. Ass'n. v. Town of Plaistow,* 836 F. Supp. 59 (D. N.H. 1993) (denying a motion to dismiss an action brought under the STAA alleging terminal access was limited by city ordinances), *rev'd on other grounds*, 67 F. 3d. 326 (1st Cir. 1995); *A.B.F. Freight System, Inc. v. Suthard,* 681 F. Supp. 334 (E.D. Va. 1988) (finding restrictions on routes for heavy trucks were preempted by the STAA); *New York State Motor Trucking Ass'n. v. New York,* 654 F. Supp. 1521 (S.D.N.Y. 1987) (finding a law that restricted heavy trucks on interstate highways and local streets was preempted under the STAA); *Consolidated Freightways*

23

*Corporation of Delaware v. Larson,* 647 F. Supp. 1479 (M.D. Pa. 1986) (finding the STAA preempted any requirement that truck routes get prior approval); *United States v. Connecticut,* 566 F. Supp. 571 (D. Ct. 1983) (granting a request for an injunction of state legislation that prohibited tandem lengths allowed under the STAA), *affirmed without opinion*, 742 F.2d 1443 (2nd Cir. 1983) and 465 U.S. 1014 (1984). As discussed above, *Armstrong* does not preclude Plaintiffs' claim to enjoin the truck stop ordinance as preempted by the STAA.

Courts rendering decisions after *Armstrong* have not found its application to be as preclusive as the trial court did here. In *Espinoza v. Mont. Dep't. of Revenue,* 140 S. Ct. 2246 (2020), the Supreme Court voided Montana's no aid to religious institutions provision as a violation of the First Amendment. *Id.* at 2262. The Court cited Armstrong for the proposition that the Supremacy Clause "creates a rule of decision directing state courts that they 'must not give effect to state laws that conflict with federal law[ ].'" *Id.* at 2262 (quoting *Armstrong* v. *Exceptional Child Center, Inc.*, 575 U. S. 320, 324 (2015)). And given the conflict between the First Amendment and the no-aid provision, "the Montana Supreme Court should have 'disregard[ed]' the no-aid provision and decided this case 'conformably to the [C]onstitution' of the United States." Id. (quoting *Marbury* v. *Madison*, 5 U.S. 137, 1 (1803)). The First Amendment has no private cause of action which allows

24

enforcement. The Supremacy Clause is a rule of decision, and it must be applied here where there is an actual controversy pending before the Court.

In *Air Evac EMS, Inc. v. Tex. Dep't of Ins.,Div. of Workers' Comp.*, 851 F.3d 507 (5th Cir. 2017), Air Evac claimed federal preemption of the payment schedule of the Texas Board of Workers' Compensation for air ambulance services. *Id.* at 510. The district court held that it had jurisdiction to hear the case under *Armstrong*, but dismissed Air Evac's request for declaratory judgment and injunctive relief because the Declaratory Judgment Act did not create a private cause of action. *Id.* at 512. The Fifth Circuit vacated and remanded the district court's order, holding that *Armstrong* reaffirmed plaintiffs right to seek injunctive relief against state officers under *Ex Parte Young*'s equitable exception. *Id.* at 515.

In *Chamber of Commerce of the United States v. Bonta,* 62 F. 4th 473 (9th Cir. 2022), the Ninth Circuit was confronted with a California statute that made it a crime for employers to require employees or job applicants to consent to arbitration. *Id.* at 478. The Chamber of Commerce brought an action to enjoin the enforcement of the California law as violative of the Federal Arbitration Act ("FAA"). *Id.* at 480-81. The Ninth Circuit declared the California law invalid on Supremacy Clause grounds because "[t]he Supremacy Clause provides a rule of decision for determining whether federal or state law applies in a particular situation." *Id.* at 481 (internal quotations omitted). The Ninth Circuit, like other courts post-*Armstrong,*

25

held a case or controversy[2] must exist with a clear delineation of the facts, and the injunction must be one which can be administered. All of these elements exist in the instant case, whereas they did not in *Armstrong*.

Finally, the Second Circuit in *UnitedHealthcare of N.Y., Inc. v. Lacewell*, 967 F.3d. 82 (2d Cir. 2019), found *Armstrong* did not prohibit plaintiffs from seeking injunctive relief to prevent enforcement of a regulation as preempted by the Affordable Care Act. *Id.*at 89. In the absence of a private right of action in the ACA, the court held that the plaintiffs' claim for injunctive relief fell squarely within its equitable jurisdiction. *Id.* (citing *Armstrong*, 575 U.S. at 326 and *Friends of the E. Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 144 (2d Cir. 2016)). The Second Circuit then found plaintiffs could bring their claim for injunctive relief because neither of the problems identified in *Armstrong* were present. Even though the statute only provided for agency remedies, the agency was not limited to a single remedy. *Id.* at 91. Nor were the ACA statutory and regulatory provisions "judicially unadministrable." *Id.*

---

[2] During oral argument, the District Court determined there was a case or controversy between the parties:

THE COURT: And so that would seem to me to suggest there is an actual controversy because there is a Georgia Supreme Court decision that upholds the ordinance. (Transcript, Doc. 36, Pg. 23: 6-7).

MR. BARNES: There's a case in controversy. It's been going on for 25 years.

THE COURT: I'm convinced that there is. (Transcript, Doc. 36, Pg. 50: 3-5).

Contrary to the trial court's holding, this case is not on all fours with *Armstrong*. The STAA provision here does not suffer from the same problems as *Armstrong*. The enforcement remedy is not the sole, limited remedy, and the text is not unadministrable for federal courts.

## II.    Rockdale County's Truck Stop Ordinance Falls Within the Purview of the STAA.

The STAA plainly precludes local ordinances that prevent heavy trucks from having reasonable access to facilities for food, fuel, repair, and rest. A total prohibition of truck stops surely fits the bill. The facilities banned by Rockdale County's truck stop ordinance are precisely the type of facilities that trucks and their drivers need for food, fuel, rest, and repair. *See Hanscom's Truck Stop v. City of Portsmouth*, 1998 U.S. Dist. LEXIS 18059 (D. N.H. 1998) (recommending enjoining an ordinance that violated the STAA because it effectively prevented trucks from using one of the truck stops in an area). Plaintiffs have alleged that current facilities in the area are inadequate for providing food, fuel, rest, and repair to commercial motor vehicles, and Rockdale County's ordinance prohibits truck stops that would provide those facilities. (Doc. 1, at 22, 40-41, ¶¶ 73, 131, 134-35).

Rockdale County's truck stop ordinance bans gas stations with convenience stores from providing facilities for truck repair, overnight parking, rest, showers, and other facilities that would provide food, fuel, rest, and repair necessary for heavy trucks. (Doc. 1, at 26, ¶ 89). At a minimum, whether Rockdale County's truck stop

27

ordinance bans for "reasonable access" to facilities that provide those services is a fact-specific question determination that, if adequately pled as it is here, should not be dismissed on the pleadings.

The district court's reliance on *Garza v. City of LaPorte*, 160 F. Supp. 3d 986 (S.D. TX. 2016), for the proposition the STAA does not reach local zoning restrictions is misplaced. In *Garza*, a truck tractor driver brought an action pursuant to the STAA challenging local ordinances that denied him access to businesses and food. *Id.* at 989, 998. The *Garza* court evaluated whether the truck tractor driver had "reasonable access" [3] under the STAA, ultimately determining that he did because "there are multiple facilities for food, fuel, rest, and repair that these vehicles can safely access." *Id.*at 1004. By contrast, the instant case involves a total prohibition of any facility in Rockdale County designed and intended to provide "food, fuel, repair, and rest" for heavy trucks. The *Garza* court itself concluded that "states cannot arbitrarily deny commercial motor vehicles reasonable access to facilities for

_____

[3] 23 C.F.R. § 658.19 provides further guidance. "Reasonable access" must be allowed between the interstate system and terminals and facilities for "food, fuel, repair, and rest" even if the route is off the National Network. Within one mile of the interstate system demonstrated safety regulations are the only consideration which may restrict access. *Aux Sable Liquid Prods. v. Murphy,* 526 F.3d 1028, 1036 fn.4 (7th Cir. 2008). Plaintiff's proposed QuikTrip facility is within 1,000 feet of the interstate system (Doc. 1, at 31, ¶ 102), and Rockdale County has not asserted any safety reasons in its answer or at any time during the proceedings in state court.

food, fuel, rest, and repairs and satisfy the STAA." *Id.* at 1001. That is precisely the effect of the Rockdale County truck stop ordinance.

## III.    The Statute of Limitations Does Not Bar the 42 U.S.C. § 1983 Claims.

This Court's binding precedent holds that the statute of limitations on Plaintiffs' 42 U.S.C. § 1983 claims did not begin to run until the state court entered its final judicial decision. This is based on the desire to keep federal courts from being inundated with parallel actions in state court.

Under *Williamson Cty. Regional Planning Comm'n. v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), two elements were necessary for a takings claim to proceed in federal court. First, for the regulatory agency to reach a final decision, and second, to exhaust the administrative state procedures, including inverse condemnation of the allegedly taken property. *Id.* at 194-197. This presented a dilemma for litigants: those who brought a compensation claim in state court might, if unsuccessful, thereafter be barred from bringing their federal action because the full faith and credit statute required the federal court to give preclusive effect to the state court's decision.

In *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019), the Supreme Court solved this dilemma by overruling *Williamson* to the extent it required exhaustion of state administrative remedies including inverse condemnation. *Id.* at 2169-2170. The final decision requirement was left

undisturbed. *See id.*, at 2169 ("Knick does not question the validity of this finality requirement, which is not at issue here").

*Williamson* is still the binding precedent in determining what and when a final judgment is effective. A claim is not ripe "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *See Williamson,* 473 U.S. at 175. This is true "whether it is analyzed as a deprivation of property without due process under the Fourteenth Amendment, or as a taking under…" the Fifth Amendment." *Id.* at 200. A final decision is "a final definitive position." *Id.* at 191.

This Court has held, "in suits for deprivation of property under section 1983, 'the same considerations that render a claim premature prevent accrual of a claim for limitations purposes, and the claim does not accrue until the relevant governmental authorities have made a final decision on the fate of the property.'" *Corn v. Lauderdale Lakes,* 904 F.2d at 588 (11th Cir. 1990); *accord New Port Largo, Inc. v. Monroe Cnty.,* 985 F.2d 1488, 1494 (11th Cir. 1996) ("[U]nder *Corn III,* takings claims can accrue, if ever, only *after* the state judiciary's final determination on the status of the subject property… under *Corn III,* NPL's *claims* did not accrue until the state proceedings had concluded."); *Eide v. Sarasota Cnty.*, 908 F.2d 716, 718, 720-21 (11th Cir. 1990) (holding a landowner must obtain a final decision and "utilize state procedures which

provide for obtaining just compensation" before a federal court can assess the "economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations"); *see also S. Grande View Dev. Co. v. City of Alabaster, Alabama,* 1 F.4ᵗʰ 1299, 1306 (11th Cir. 2021) (holding final decision requirement still applies in land use cases).

The relevant dates follow:

1.    September 4, 2019, Rockdale officials reject Appellants' application for a Quik Trip to be constructed on the property owned by Appellants. (Doc. 1, at 20, ¶ 65)

2.    September 19, 2019, Appellants appeal to the Rockdale County Board of Adjustment. (Doc. 1, at 20, ¶ 67).

3.    December 2, 2019, the BOA denies the appeal. (Doc. 1, at 23, ¶ 75).

4.    December 23, 2019, a writ of certiorari to the BOA is filed in the Superior Court of Rockdale County. (Doc. 1, at 23, ¶ 76).

5.    September 4, 2020, the Superior Court found the ordinance in question to be invalid because it was vague and uncertain. (Doc. 1, at 24, ¶ 80). Rockdale County appealed to the Georgia Supreme Court.

6.    November 2, 2021, the Georgia Supreme Court reversed and remanded with instruction to determine if there was substantial evidence to uphold the BOA. (Doc. 1, at 24, ¶ 82).

7.     April 1, 2022, the Superior Court issued a "Final Order" upholding the BOA. (Doc. 1, at 25, ¶ 84). Appellants filed a discretionary appeal to the Georgia Court of Appeals.

8.     May 31, 2022, the Georgia Court of Appeals denied the discretionary appeal. (Doc. 1, at 25, ¶ 86). Appellants filed a petition for certiorari to the Georgia Supreme Court.

9.     November 28, 2022, the instant complaint was filed in the district court. (Doc. 1).

10.     February 21, 2023, the Georgia Supreme Court denied certiorari.

*New Part Largo* holds that "**state judicial authorities must make a final determination** …." 985 F.2d at 1493 (emphasis supplied).[4] The District Court held *Knick* overruled *New Port Largo*. Doc. 37, p. 23, fn. 8. *Knick* overruled the second requirement of *Williamson* that a litigant must avail itself of the state procedures for post deprivation compensation but left the finality requirement intact. *Knick*, 139 S. Ct. at 2169. And, *Corn III* and *New Port Largo* dictate how the finality requirement

---

[4] In *New Port Largo*, this Court discussed at length *Corn*'s conformance with *Williamson* as to finality, ultimately deciding that the statute of limitations did not run while the county litigated in state court. 988 F.2d 1488 at 1492 ("...takings claims can accrue, if ever, only *after* the state judiciary's final determination of the status of the subject property"). Judge Edmondson observed "*Williamson* said nothing, much less made law, about the accrual of takings claims *for limitations purposes* or, put differently, about when limitations run against a landowner whose land is taken." *Id.* at 1499 (emphasis in original). *Corn III* and *New Port Largo* remain binding precedent on when a cause of action accrues and when a final order occurs.

must be interpreted in this Circuit. As such, it was no sooner than April 1, 2022, when the Final Order was issued by the Superior Court of Rockdale County, or no later than February 21, 2023, when the Supreme Court of Georgia denied certiorari. (Doc. 1, at 25, ¶ 84). Either date makes the filing of the complaint timely.

*Ashcroft v. Randel*, 391 F. Supp. 2d 1214 (N.D. Ga. 2005), cited by the District Court (Doc. 37, at 21), is inapplicable because that case and cause of action did not require a final decision as a prerequisite to access to federal court.

In *South Grande View Development Co. v. City of Alabaster*, 1 F.4th 1299 (11th Cir. 2021), this Court reaffirmed the finality requirement of *Williams*, but held it was satisfied because the ordinance targeted the plaintiff's property and seeking judicial relief would be futile. *Id*. at 1301 (finding a takings claim "not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue").

> Even assuming *arguendo* the City's decision was not final, we still hold that this case is ripe because of the futility exception: An exception to the final decision requirement exists where it would be futile for the plaintiff to pursue a final decision. In *Greenbriar*, we analyzed a takings claim where a zoning ordinance was construed as a 'final zoning decision[]' under the finality doctrine. … [where] Alabaster's zoning decision was necessarily final.

*S. Grande View Dev.,* 1 F.4th 1299, 1308 n.12 (citations omitted).

The requirement of a final order has a good public policy basis. There are many land use decisions appealed to the superior court every year. Most settle. To

hold the federal court cause of action accrues at the first decision of a county or city would require practitioners to unnecessarily burden the federal court system. The state court proceedings are not in the nature of "exhaustion of remedies" but a final order necessary for a federal filing.

The bar of the statute of limitations is a fact intensive inquiry and is rarely capable of resolution on at this stage, especially where disputed. *See Stevenson v. Colgate-Palmolive Co*, 2017 U.S. Dist. LEXIS 227806, at *10 (M.D. Fla. Sep. 7, 2017) ("Where 'noncompliance with the statute of limitations is not apparent from the Complaint, [i]t would be premature to dismiss the complaint because the applicable statute of limitations has run.") (citations omitted). The granting of judgment on the pleadings on the statute of limitations grounds should be reversed.

## IV. The Trial Court Erred by Finding that Plaintiffs Did Not Have Standing to Assert Claims Arising out of the 2021 Ordinance.

The District Court held the Appellants were too late to bring an action where they pursued a final order in the state court, but too early to claim harm of an ordinance further targeting the property of the Appellants. (Doc. 37, at, 22).  But the challenge was ripe.

As discussed above, the requirement of a final order and the use of the state court system to determine finality is perquisite to a federal takings case. There are, however, exceptions when a governmental body targets a particular property and enacts an ordinance targeting that property.

34

Rockdale County has waged a 25-year campaign to prevent the Appellants from developing their property to serve heavy trucks, even though other service stations on the same road fuel and service such trucks. This effort includes passing an ordinance defining a "truck stop" to prohibit the ancillary sale of fuel and servicing of trucks on property zoned for service stations beginning in 1999. (Doc. 1, at 7, ¶¶ 23-36). In 2018, a proposed text amendment to clarify the use of the property as a travel plaza which was recommended by the Planning Commission but defeated by the BOC. (Doc. 1, at 17-18, ¶¶ 56-60). On September 4, 2020, the Superior Court struck the truck stop ordinance as facially infirm on vagueness grounds, but the state Supreme Court reversed and remanded. (Doc. 1, at 24, ¶ 80). Immediately after the reversal by the Supreme Court of Georgia, the BOC amended the truck stop definition to specifically incorporate more stringent restrictions applicable to Appellants' property. (Doc. 1, at 26, ¶ 89).

There are exceptions to the final order rule. For example, where a local Board does not have the power to overrule the City's zoning decision, the rezoning ordinance is a final decision ripe for review. *A.A. Profiles, Inc. v. Ft. Lauderdale,* 850 F.2d. 1483, 1487 (11th Cir. 1988). Another exception exists "where it would be futile for the plaintiff to pursue a final decision.'" *S. Grande View,* 1 F.4th at 1308 n.12). Both are present here. Given the history, no reasonable person would believe that Rockdale County would suddenly change its view after enacting a more

restrictive ordinance. *See also Brantley County Development Partners, LLC v. Brantley County, Georgia,* 559 F. Supp. 3d 1345, 1362 (discussing futility exception to Georgia's administrative exhaustion requirement "where further administrative review would result in another decision on the same issue by the same body"); *see also City of Suwanee v. Settles Bridge Farm, LLC,* 292 Ga. 434 (2013); *North Face Constr., LLC v. City of Birmingham,* 2022 U.S. Dist. LEXIS 122802 (N.D. Ala. 2022). The dispute regarding the 2021 Ordinance should proceed.

## V.     The Trial Court Erred by Finding Plaintiffs' Constitutional Claims are Barred by *Res Judicata* and that the *Jennings* Reservations Could Only Apply to the Takings Claim and not the Other Constitutional Claims.

The District Court held this federal action was barred by the doctrine of *res judicata* as the earlier action could have been litigated in state court. Further, the Court held a *Jennings* reservation was not effective since *Knick* did not require an exhaustion of remedies in state court for the prosecution of a federal action. (Doc. 37, at 29). Both findings are incorrect. The petition for a writ of certiorari was required to obtain a final order, and the same subject matter is not involved in both cases. A federal action is preserved pursuant to *Jennings*.

On December 23, 2019, Appellants, in order to obtain a final order in regard to the truck stop ordinance, filed a petition for writ of certiorari, mandamus, declaratory judgment and attorney fees in the Superior Court to review the decision of the BOA. (Doc. 1, at 23, ¶ 76). The Appellants were involuntarily required to file

36

in state court in order to obtain the final order. *See Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1306 (11th Cir. 1992) (describing requirement of involuntariness of state-court litigation to make Jennings reservation); *New Port Largo,* 985 F.2d at 1493 (discussing necessity of final determination). The petition sought to reverse the BOA decision based on a facial claim of vagueness under the Georgia Constitution and that there was not substantial evidence to sustain the decision. (Doc. 1, at 24, ¶ 80). There was no claim for inverse condemnation, due process, or any taking of the property. In the writ of certiorari, there was a *Jennings* reservation stating:

> No claim is made pursuant to the Constitution or laws of the United States. Such action, including damages, are reserved for the appropriate courts of the United States.

(Doc. 1, at 23, ¶ 77); *c.f. Fields*, 953 F.2d 1299 (describing Jennings procedure by making reservation on state court record). The Superior Court dismissed all the counts except the certiorari count (Doc. 1, at 24, ¶ 79).

A writ of certiorari can only be heard on legal issues such as overbreadth, and the sufficiency of the facts at the lower tribunal.[5] No new evidence may be introduced-it is a trial on the record below. O.C.G.A. § 5-4-1.[6] *See Macon-Bibb Cty.*

---

[5] The BOA decisions or appeals from administrative decisions are quasi-judicial under Georgia law. *City of Cumming v. Flowers*, 300 Ga. 820 (2017).

[6] On July 1, 2023, a new version of certiorari was effective. All references herein are to the version in effect at the time of the proceedings before the Superior Court. *See* 2022 Ga. Laws 767.

*Planning & Zoning Comm'n v. Epic Midstream, LLC*, 349 Ga. App. 568 (2019) (scope of review limited to all errors of law and determination as to whether ruling below sustained by substantial evidence).

In *Coen v. CDC Software Corp.*, 304 Ga. 105, 113 (2018), the Supreme Court of Georgia examined its somewhat confusing past descriptions of same "subject matter" and same "cause of action" for purposes of a bar of *res judicata*. In applying the *Coen* standard, this Court found in an unpublished decision that there was not the same subject matter so as to bar the federal action. "[I]t is not enough that the former and present causes of action arose from the same set of facts: *Coen* instead demands that we examine the wrongs alleged and the necessary acts that gave rise to a cause of action focused on those wrongs." *Sheba Ethiopian Rest., Inc. v. Dekalb Cty, et al,* 820 Fed. Appx. 889, 891 (11th Cir. 2020).

The facts of *Sheba* are instructive. Sheba operated an Ethiopian restaurant in DeKalb County, which revoked the right to operate the restaurant. Sheba sued in state court, which later dismissed the action. Sheba then sued in federal court alleging the revocation was the result of racial discrimination. The district court ruled that the federal suit was barred by *res judicata.* Because of different wrongs alleged, the district court was reversed. *Id.* at 889, 900.

There are different wrongs alleged here. Appellants did not and could not raise in the certiorari case the constitutional infirmities it now seeks to litigate in federal

court. Appellants were involuntarily forced to pursue a certiorari action in state court in order to bring its federal action. *Jennings* reserved the right to bring this federal action. Also, the wrongs asserted are necessarily different by the nature of the certiorari action. The District Court erred in holding otherwise.

## VI.    The Trial Court Erred by Finding that Plaintiffs Did Not Sufficiently Plead Their Takings Claim.

The District Court held the takings claim failed on the merits because it did not allege "all economically beneficial or productive use of the property" was lost. (Doc. 37, at 32). This is not the pleading requirement.

42 U.S.C. § 1983 allows the recovery of damages for the deprivation of rights guaranteed by the Constitution or laws of the United States under the color of state law. The STAA is a federal law, and the rights guaranteed by the STAA to reasonable access to food, fuel, rest, and repair are being deprived because of the ordinance.  Therefore, the violation of the STAA is cognizable pursuant to § 1983. *See Talevski*, 599 U.S. 166, 143 S. Ct., at 1446 (noting "§1983 can presumptively be used to enforce unambiguously conferred federal individual rights, unless a private right of action under §1983 would thwart any enforcement mechanism …").

The Supreme Court has acknowledged private property may be regulated in such an onerous manner as to be compensable because of a "regulatory taking." *See Pennsylvania Coal Company v. Mahon*, 260 U.S. 393, 415 (1922) ("while property may be regulated to a certain extent, if regulations go too far it will be recognized as

a taking".)  Regulatory takings, other than physical occupation of property by government and restrictions which take all of the value, are governed by the factors in *Penn Central Transportation v. New York City*, 438 U.S. 104, (1978) and *Lingle v. Chevron U.S.A. Inc,* 544 U.S. 528, 549 (2005) (assessing "[t]he economic impact of regulation on the claimant and, particularly the extent the regulation with distinct expectations."); *South Grande View*, 1 F.4th at 1310 (courts look to economic impact of regulation and interference with "distinct investment-backed expectations" in regulatory takings cases).

The Complaint plainly alleges the factors identified in the above cases. Plaintiffs have held the property for over 20 years and have been unable to sell or develop it; they have invested $140,000 in securing sewer access; the property is located at a full diamond highway intersection; and Plaintiffs have had their attempts at investment repeatedly frustrated, despite a multitude of ground leases and other contracts with Petro, Inc., QuikTrip, and others. (Doc. 1, at 4, 9, 12, ¶¶ 13, 32, 33, 34. 42).

Applying the *Penn Central* factors, the economic impact of the regulation has been to deprive the Plaintiffs of their "reasonable investment-backed expectations". *South Grande View*, 1 F.4th at 1307. The character of the government action has been a total prohibition of the use of the property to service heavy trucks. And the use of the property will not burden the roads of Rockdale County because of the proximity

40

of the use to the interstate, meaning the regulations do not further any valid governmental interest.

There are three compensable takings claims under the Fifth and Fourteenth Amendment. Two are *per se* takings - the physical occupation of the property and the regulation of the property to the extent there is no value. A third, however, is a regulatory taking under *Penn. Central, supra.* Regulatory takings fall short of *per se* takings and ***"do not require zoning ordinances to take all of the property's value."*** *BVCV Hight Point, LLC. v. The City of Prattville, Alabama,* 2022 U.S. Dist. LEXIS 154894, at \*20 (M.D. AL. 2022) (citing *Lingle*) (emphasis supplied).

Finally, the cases cited by the District Court are inapposite. *Etheron v. City of Rainsville,* 662 Fed. Appx. 656 (11th Cir. 2016) was a *per se* taking case, and *Agripost, Inc. v. Miami-Dade Cnty.*, 195 F.3d 1225 (11th Cir. 1999), dealt with the exhaustion of state remedies, which is no longer required under *Knick*.

The alleges that "[t]he history of the ownership and efforts to sell the Property by Plaintiffs shows there is no other economically viable use of the Property except a convenience store serving both automobiles and light and heavy trucks." (Doc. 1, at 42). This is contrary to the court's finding of no compensable taking. "It would be a very curious and unsatisfactory result, if . . . it shall be held that if the government refrains from the absolute conversion of real property to the uses of the public it can destroy its value entirely, can inflict irreparable and permanent injury to any extent,

41

can, in effect, subject it to total destruction without making any compensation, because, in the narrowest sense of that word, it is not *taken* for the public use." *First English Evangelical Lutheran Church v. Cty. of L.A.,* 482 U.S. 304, 316-17 (1987). The Complaint sufficiently alleged a takings claim.

## VII.   The Trial Court Erred By Finding that Plaintiffs Did Not Sufficiently Plead Their Equal Protection Claim.

Equal Protection applies in a zoning case where a person is treated differently than the class of which he is a member. In some cases, he may be a member of a class of one. "The Equal Protection Clause requires that the government treat similarly situated persons in a similar manner." *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002).

A property owner pursuing an equal protection claim as a "class of one" must show that "[he] has been intentionally treated different from others similarly situated and that there is no rational basis for the difference in treatment." *Foley v. Orange Cnty.*, 638 Fed. Appx 941, 942 (11th Cir. 2016). "To be similarly situated, the comparators must be prima facie identical in all relevant respects." *Id.* The inquiry is then the same as that pertaining to substantive due process challenges to a zoning ordinance: the ordinance must be "rationally related to the achievement of some legitimate government purpose." *Bannum, Inc. v. City of Fort Lauderdale*, 157 F.3d 819, 822 (11th Cir. 1998); *see also Mohit v. City of Haines City,* 2019 U.S. Dist. LEXIS 127833 *14. Here there is simply no legitimate government purpose to

prohibit all "truck stops" in Rockdale County regardless of location, acreage, or any other criteria.

Both the 2006 UDO (Uniform Development Ordinance) and the 2021 ordinance prohibit all "truck stops." (*See, e.g.*, Doc. 1, at 10-11, ¶¶39-40; *id.* at 26 ¶89). Attached to the complaint are photographs showing the enforcement of the truck stop ordinance to the plaintiff has been arbitrary and irrational. (Doc. 1-7, at 2-6). Other service stations and convenience stores (some of which are on Sigman Road, the same road as the proposed QuikTrip), service and fuel heavy trucks. These are *prima facie* identical in all relevant respects. (Doc. 1, at 49-50, ¶ 161). Plaintiffs have alleged Rockdale County requested Corey to donate the property to the county. (Doc. 1, at 43, ¶ 142). The disparate treatment of Plaintiffs, along with the reasonable inference of the request to donate the property, sufficiently alleges an intent to discriminate which would support an Equal Protection claim.

The District Court dismissed the Equal Protection claim as "not being identical." (Doc. 37, at 36). The truck stop ordinance prohibits truck stops and defines them as primarily serving heavy trucks. (*See* Doc. 1, at 11, ¶40). But Rockdale County has enforced the ordinance against Appellants even though the sale of fuel to heavy trucks is not "primary". (Doc. 1, at 16, ¶ 54). Other businesses are "servicing and fueling the same type of heavy trucks which is prohibited to Plaintiffs on the Property." (Doc. 1, at 49, ¶161). The other businesses are either

43

"primarily" fueling and servicing heavy trucks, which is prohibited as a truck stop and denied to Appellants, or primarily servicing automobiles but also serving heavy trucks which is denied to Appellants. (Doc. 1, at 12 ¶44, *id.*, at 49, ¶161). These allegations, along with those that the County desired to obtain the property and had a personal animus towards Appellants (Doc. 1, at 23, 43, ¶ 74, 142) set forth a claim for violation of Equal Protection.

## VIII.  The Trial Court Erred By Finding that Plaintiffs Did Not Sufficiently Plead Their Substantive Due Process Claim.

Generally, a Substantive Due Process claim is not supported in a land use case. However, "[w]here a person's state-created rights are infringed by a 'legislative act,' the substantive component of the Due Process Clause generally protects that person from arbitrary and irrational governmental action. The crux of this analysis is whether rights are infringed by a *legislative*, rather than an *executive* act." *Brantley County,* 559 F. Supp. 3d, at 1345, 1354. The total prohibition of truck servicing by ordinance is a legislative act. As such an ordinance is contrary to and preempted by the STAA, it therefore triggers a Substantive Due Process claim. *See* 49 U.S.C. 31 U.S.C. § 31114 (providing for reasonable access of facilities for "food, fuel, repair, and rest" for commercial motor vehicles).

There is a  Substantive Due Process violation in the ordinance facially or as applied when there is no reasonable relation of the ordinance to the public health, safety, morals or general welfare. *Corn v. City of Lauderdale Lakes*, 997 F.2d at,

44

1369, 1371 (zoning regulations may be unconstitutional as violative of substantive due process if they are "clearly arbitrary and unreasonable"); *Short Term Rental Owners Association of Georgia, Inc. v. Cooper,* 515 F. Supp. 3d 1331, 1348 (N.D. Ga. 2021) (discussing use of rational basis inquiry for substantive due process claims).

The truck prohibition shows there was no reasonable relation of the ordinance to the public health, safety, morals, or general welfare. The subject property is 1,000 feet from Interstate 20. (Doc. 1, at 31, ¶ 102); the property is 6.7 acres (Doc. 1, at 12, ¶ 43), which gives more area than a regular convenience store and fueling area; the property has larger turning areas for trucks to improve safety; (Doc. 1, at 16); the design of the QuikTrip separates truck traffic from automobile traffic to improve safety; (Doc. 1, at 16, ¶ 54); the intersecting road of I-20 is Sigman Road, a major arterial road; (Doc. 1, at 12, ¶ 43); and Rockdale County allows other convenience stores with fueling to service large trucks on smaller tracts without the safety considerations of the proposed QuikTrip. (Doc. 1, at 49-50, ¶ 161).  Such a lack of rational basis or legitimate purposes in ordinance requirements may sustain a substantive due process claim. *See LHR Farms, Inc. v. White County, Georgia*, 2010 U.S. Dist. LEXIS 149917, at *54-55 (N.D. Ga. 2010).

IX.   **The Trial Court Erred By Dismissing Plaintiffs' Claim for Attorneys' Fees on the Grounds That Their Substantive Claims Failed.**

The District Court held the claim for attorney fees pursuant to 42 U.S.C. § 1988(b) and O.C.G.A. § 13-6-11 were not recoverable as the main action was dismissed. (Doc. 37, at 42). Since the claims should not have been dismissed, the dismissal of the claim for attorney fees was likewise error.

## <u>CONCLUSION</u>

For the reasons set forth in this brief, the District Court should be reversed.

Date: December 21, 2023.

/s/ *Roy E. Barnes*
Roy E. Barnes
The Barnes Law Group, LLC

*Attorney for Appellants William E. Corey and U.S. Enterprises, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitations of both Fed. R. App. P. 27(d)(2)(A) and Fed. R. App. P. 32(a)(7) because this brief contains 11,466 words, excluding the items that may be exempted under Fed. R. App. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared with a minimum font size of 14 point Times New Roman, a proportionally spaced font, using Microsoft Office Word.

This 21st day of December, 2023.

/s/ *Roy E. Barnes*
Roy E. Barnes
The Barnes Law Group, LLC

*Attorney for Appellants William E.*
*Corey and U.S. Enterprises, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2023, the foregoing **INITIAL BRIEF OF APPELLANTS WILLIAM E. COREY AND U.S. ENTERPRISES, INC.** was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit. Per the Eleventh Circuit's ECF Guide, section 7, service upon Respondents' counsel of record will be completed by the ECF system's automatic email notice of the following:

| | |
|---|---|
| Thomas M. Mitchell, Esq.<br>Carothers & Mitchell, LLC<br>1809 Buford Highway<br>Buford, GA 30518 | William J. Linkous, III, Esq.<br>Hall County Law Department<br>P.O. Drawer 1435<br>Gainesville, GA 30503 |

This 21st day of December, 2023.

/s/ *Roy E. Barnes*
Roy E. Barnes
Georgia Bar No. 039000
THE BARNES LAW GROUP, LLC
31 Atlanta Street
Marietta, GA 30060
Telephone: (770) 227-6375
Facsimile: (770) 227-6373
Email: roy@barneslawgroup.com

*Attorney for Appellants William E. Corey and U.S. Enterprises, Inc.*

1